UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ALFRED MCZEAL** | * | CIVIL ACTION NO. 2:15 -CV-02315 |
| **VERSUS** | * | JUDGE WALTER |
| **MIDSOUTH NATIONAL BANK, NA** | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court are several motions filed by the parties:

(1) Motion to Dismiss (Rec. Doc. 56) to the plaintiff's first amended complaint (Rec. Doc. 55) filed by the defendants—MidSouth National Bank, NA; MidSouth Bancorp, Inc.; L.J. Angelle; C.R. Cloutier; James R. McLemore, Jr.; Troy M. Cloutier; Jeffery L. Blum; and Will Charbonnet, Sr.

(2) Motion for the Court to Take Judicial Notice (Rec. Doc. 57) filed by the defendants;

(3) Motion to Strike (Rec. Doc. 63) the defendants' Motion for the Court to Take Judicial Notice (Rec. Doc. 57) filed by McZeal; and

(4) Second Motion for the Court to Take Judicial Notice (Rec. Doc. 66) filed by the defendants.

For the following reasons the court will **GRANT** the defendants' Motion for the Court to Take Judicial Notice (Rec. Doc. 57), **DENY** the plaintiff's Motion to Strike (Rec. Doc. 63), and **GRANT** the defendants' Second Motion for the Court to Take Judicial Notice (Rec. Doc. 66). The court will also **GRANT** the defendants' Motion to Dismiss (Rec. Doc. 56) and **DISMISS WITH PREJUDICE** the plaintiff's second amended complaint. Finally the court will **ORDER** the plaintiff to **SHOW CAUSE** why he should not be sanctioned and refer that issue to the Magistrate Judge for further proceedings.

I.
## FACTS & PROCEDURAL HISTORY

The present case was transferred from the United States District Court for the Central District of California based on improper venue.[1] After transfer, this court denied the defendants' motion to take judicial notice of other judicial proceedings and motion to dismiss.[2] The court also denied McZeal's motion to strike and motion for judgment on the pleadings, while ordering the plaintiff to amend his complaint.[3] The court ordered the plaintiff to amend his complaint because he failed to state factual allegations that supported his legal conclusions.[4] The plaintiff submitted an amended complaint on September 12, 2016.[5] This amended complaint is forty-seven pages with a twenty-eight page attachment that repeats the claims made in the complaint. Judge Duval's description of another complaint filed by McZeal, Jr. in a different case in the Eastern District of Louisiana accurately describes the contents the amended complaint before the court—"Far from being 'simple, concise, and direct' and simply providing a 'statement of the claim,' McZeal's allegations are convoluted, rambling, and disjointed, providing no clear statement of a claim. McZeal's claims of 'fraud' consist of conclusory statements that do not state specific facts." *McZeal v. J.P. Morgan Chase Bank, NA*, No. CIV.A. 13-6754, 2014 WL 3166715, at *7 (E.D. La. July 7, 2014).

The claims in the amended complaint stem from a foreclosure on a commercial property located at 2007 Moeling Street, Lake Charles, Louisiana. The amended complaint is virtually devoid of factual details regarding the foreclosure. The court has pieced together the following

---

[1] *See* Filing Note for Rec. Doc. 1; *McZeal v. MidSouth National Bank, NA*, 15-cv-04251-FMO (DTB) (C.D. Cal.), Order Granting Defendants' Motion to Dismiss or Transfer (Rec. Doc. 16).

[2] Judgment (Rec. Doc. 52).

[3] Judgment (Rec. Doc. 52).

[4] Report and Recommendation (Rec. Doc. 51), adopted by Judgment (Rec. Doc. 52).

[5] Am. Compl. (Rec. Doc. 55).

timeline of events based on court documents submitted by the defendants and a bankruptcy proceeding filed in the Western District of Louisiana by McZeal, Jr.'s father.[6]

On June 9, 2004,[7] Alfred McZeal, Sr., the plaintiff's father, borrowed $50,288.00 from MidSouth National Bank, NA (MidSouth) and secured $50,000 of the loan with a multiple indebtedness mortgage on the commercial property.[8] The mortgage was recorded with the Calcasieu Parish Clerk of Court.[9] On August 30, 2004, McZeal, Sr. transferred the property to a family trust[10] and Alfred McZeal, Jr. was named as the trustee and a beneficiary of the trust.[11] However the trust apparently was not recorded prior to filing for bankruptcy.[12] At some point thereafter, McZeal, Sr. went into default on his MidSouth loan.[13]

On July 20, 2009, McZeal, Sr. filed for Chapter 7 bankruptcy in the Western District of Louisiana.[14] The debtor was discharged on November 16, 2009. On November 24, 2009, MidSouth petitioned the 14th Judicial District Court of Calcasieu Parish for a Writ of Seizure and Sale, directing the Sheriff to seize and sell the mortgaged property, without appraisal to

---

[6] As explained below, the court can take judicial notice of other court proceedings. *See Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 408 (5th Cir. 2004) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)). The court takes judicial notice of the proceedings and what was filed. However, the court does not take judicial notice of the accuracy of the facts, but merely pieces a timeline together from these other proceedings to make sense of the plaintiff's complaint.

[7] MidSouth's filing in *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.), Motion for Relief from Stay and to Compel Abandonment of Property (Rec. Doc. 80), states that the mortgage was executed on August 17, 2004.

[8] Exhibit 2 (Rec. Doc. 57-1), pp. 11, 13.

[9] Exhibit 2 (Rec. Doc. 57-1), p. 12.

[10] During later bankruptcy proceedings, McZeal, Sr. asserted that he retained a 5% ownership interest in the trust, however nothing in the trust instrument supports his contention. *See In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.) (Rec. Doc. 54).

[11] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.) (Rec. Doc. 53-12), p. 5. The mortgage documents submitted by the defendants were incomplete, so it is unclear whether McZeal, Sr. could transfer the property without approval from the bank. *See* Exhibit 2 (Rec. Doc. 57-1), pp. 13-17.

[12] No recording documentation was submitted to the bankruptcy court. *See generally In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.). The trust appears to be valid because it was signed by the settlor (McZeal, Sr.) and two witnesses. La. R.S. 9:1752.

[13] *See* Petition for Executory Process (Rec. Doc. 57-1), p. 7, granted by Order (Rec. Doc. 57-1), p. 10.

[14] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.).

satisfy the outstanding debt of over $40,000.[15] The state district court granted the petition and ordered that a Writ of Seizure and Sale be issued without appraisement and without the 3-day demand for payment delay.[16] On March 5, 2010, MidSouth filed a Motion for Relief from Stay and to Compel Abandonment of Property.[17] McZeal, Sr., objected[18] arguing that another creditor had superior rights to the property.[19] In his amended complaint, the plaintiff contends that he had a superior lien on the commercial property,[20] which was likely the superior interest that was mentioned by McZeal, Sr. in his objections.

The Bankruptcy Court granted MidSouth's motion.[21] On April 16, 2010, the Bankruptcy Court specifically ordered that MidSouth could continue its state court foreclosure proceedings on the Moeling Street property because the bankruptcy estate abandoned the property.[22] On October 13, 2010, the Calcasieu Parish sheriff sold the property to MidSouth for $726.75.[23] MidSouth recorded the sale on November 3, 2010.[24] McZeal, Sr.'s bankruptcy discharge ultimately was revoked in November 2011 after the court discovered that he fraudulently

---

[15] *See* Petition for Executory Process (Rec. Doc. 57-1), p. 8. From the filings, it is unclear why MidSouth went initially to state court before asking for relief from the bankruptcy stay.

[16] *See* Petition for Executory Process (Rec. Doc. 57-1), p. 10.

[17] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.), Motion for Relief from Stay and to Compel Abandonment of Property (Rec. Doc. 80).

[18] In a strikingly similar format to McZeal, Jr.'s filings.

[19] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.), Objection to Motion for Relief from Stay (Rec. Docs. 70, 71). MidSouth's motion was filed multiple times before it conformed to the requirements of the court. Therefore, McZeal's objections preceded the actual motion that the court ruled on.

[20] Amended Compl. (Rec. Doc. 55), p. 3.

[21] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.), Hearing (Rec. Doc. 86), Order (Rec. Doc. 94).

[22] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.), Order (Rec. Doc. 94).

[23] Sherriff's Deed of Sale (Rec. Doc. 57-1), pp. 69-70.

[24] Calcasieu Parish Recording Page (Rec. Doc. 57-1), p. 68.

transferred property to his son in violation of the bankruptcy stay.[25] McZeal, Sr. passed away on September 25, 2015.

Plaintiff alleges in his amended complaint that MidSouth's foreclosure was improper because it allowed MidSouth to seize the commercial property to satisfy about $40,000 worth of debt, when McZeal, Jr. (without explaining how or with what basis) appraised the property's value at $400,000. He also alleges that the bank did not follow the correct procedures under Louisiana law.[26] The plaintiff generally alleges that, between 2009 and 2016, the defendants carried out "an illegal scheme to steal personal and business property, without due process of law, and under the guise of lawful means."[27] McZeal, Jr. lists seven actions allegedly committed by MidSouth that he contends were fraudulent: (1) misrepresenting his lien status; (2) filing misleading documents in a bankruptcy case; (3) stating it was a secured creditor in a bankruptcy case; (4) stating that it had rights over the commercial property; (5) conspiring with the bankruptcy trustee; (6) making false representations over a telecommunications network; and (7) making false representations in the public record regarding its ownership status.[28] The plaintiff alleges that the bankruptcy trustee conspired with MidSouth to seize the entire commercial property, even though MidSouth was only entitled to a fraction of the value. The plaintiff does not further explain what MidSouth and its representatives actually did that constituted fraud.

Based on these allegations, the plaintiff pleaded fifteen claims[29] and asks for $23,780,000 from each defendant.[30] All of the allegations are legal conclusions with nonexistent or minimal

---

[25] *In re Alfred McZeal Sr.*, 09-BK-50973 (W.D. La.), Judgment (Rec. Doc. 173).

[26] Amended Compl. (Rec. Doc. 55), p. 10, ¶ 9, p. 13, ¶ 23.

[27] Am. Compl. (Rec. Doc. 55), p. 14, ¶ 21.

[28] Am. Compl. (Rec. Doc. 55), p. 15, ¶ 23(A). The complaint does not explain when, to whom, or where MidSouth did this.

[29] RICO under 18 U.S.C. §§ 1964 (a), (b). (c), and (d); violation of privacy rights under the Fourth Amendment; violation of privacy rights under the Fourteenth Amendment, violation of privacy rights under common law; Civil

factual support. McZeal, Jr. essentially uses seventy-five pages to say over and over again that the property was fraudulently seized without explaining the factual basis of the fraud. He attempts to comply with specific pleading standard in some portions of the complaint by detailing who, when, and where the fraud occurred but, when he explains what the fraud was, he continues to characterize the specific acts as "acts of fraud"[31] or "fraudulent acts."[32] The closest statement of specific acts of fraud is that MidSouth committed fraud by representing that it owned the Moeling Street property and had the right to enter and take possession of the property.[33]

After the plaintiff filed his amended complaint, the defendants again moved for the court to take judicial notice of other court proceedings and to dismiss the case. The defendants argue that the court should take judicial notice of the prior proceedings because the prior proceedings show that the current claims are barred and the submitted documents also rebut some of the plaintiff's convoluted contentions. The defendants argue that the plaintiff's complaint should be dismissed because (1) the court does not have jurisdiction to overturn a state court judgment under the Rooker-Feldman doctrine, (2) the claims are precluded under *res judicata*, and (3) each claim fails to state a claim for relief under Federal Rules of Civil Procedure 8, 9(a), and 12(b)(6). The plaintiff countered with a Motion to Strike.

---

Action for Equal Rights under Law under 42 U.S.C. § 1981; Civil Action for Equal Rights under Law under 42 U.S.C. § 1982; Civil Action for Equal Rights under Law under 42 U.S.C. § 1983; Civil Action for Equal Rights under Law under 42 U.S.C. § 1985; Civil Action for Equal Rights under Law under 42 U.S.C. § 1986; civil conspiracy; unjust enrichment; aiding and abetting; declaratory judgment under 28 U.S.C. § 2201, *et seq.*; extreme and outrageous conduct; and punitive damages.

[30] Am. Compl. (Rec. Doc. 55).

[31] Am. Compl. Ex. F (Rec. Doc. 55-1), pp.3-4, ¶¶ 12-18.

[32] *See, e.g.*, Am. Compl. Ex. F (Rec. Doc. 55-1), p. 1, ¶ 1.

[33] Am. Compl. Ex. F (Rec. Doc. 55-1), p. 1, ¶ 4. This contention is clearly rubtted by the recorded deed of sale showing that MidSouth owned the property. Recorded Sherriff's Deed of Sale (Rec. Doc. 57-1), pp. 68-70.

## II.
## LAW & ANALYSIS

### A. Motion to Strike

McZeal, Jr. moves to strike the defendants' Motion for the Court to Take Judicial Notice and Motion to Dismiss claiming that he was not served.[34] McZeal, Jr. asserts that he received the twenty-five exhibits attached to the Motion for the Court to Take Judicial Notice, but he did not receive the motion itself.[35] McZeal, Jr. also claims that he never received an actual copy of the Motion to Dismiss.[36] The plaintiff timely responded to both motions allegedly because he framed his response on the title of the motions.[37] McZeal, Jr. also attached a declaration in which he stated that he did not receive the motion.[38] However, attached to both the first Motion for the Court to Take Judicial Notice[39] and Motion to Dismiss[40] is a Proof of Service, which was signed by counsel for the defendants. In the Proofs of Service, the defendants' counsel signed under penalty of perjury that she mailed a copy of the motion to the defendant. Additionally, in the defendants' response to McZeal, Jr.'s Motion to Strike, the defendants include an affidavit that was signed under penalty of perjury.[41] In the affidavit, the defendants' counsel describes in great detail how she mailed the motions to McZeal, Jr. at the address he provided.

Under Federal Rule of Civil Procedure 5(b)(2)(C), a motion is considered served when it is "mail[ed] to the person's last known address." Additionally, under Local Rule 5.3, a party is

---

[34] *See* Motion to Strike (Rec. Doc. 63), Response to Motion for Court to Take Judicial Notice and Motion to Dismiss (Rec. Doc. 62). Whether the plaintiff is seeking to strike both motions is unclear, but because he alleges to have not received both motions, the court will consider the motion to strike in regard to both of the defendants' motions.

[35] Response (Rec. Doc. 62), p. 2.

[36] Response (Rec. Doc. 62), p. 4.

[37] Response (Rec. Doc. 62), p. 7.

[38] Declaration of Plaintiff (Rec. Doc. 62-1), p. 2.

[39] Proof of Service (Rec. Doc. 57-4).

[40] Proof of Service (Rec. Doc. 56), p. 25.

[41] Declaration of Denise Walker (Rec. Doc. 65), pp. 11-12.

required to file a certificate of service, stating that "copies have been served on all parties or their attorneys, either in person or by mailing." The defendants complied with these rules.

The court finds that the defendants adequately established sufficient service of the motions through their Proofs of Service and detailed affidavit explaining how service was perfected. The plaintiff's conclusory allegations that he received everything but the motions do not rebut the defendants' showing of service. Therefore, the court finds that service was properly perfected, and McZeal, Jr.'s Motion to Strike will be **DENIED.**

### B. Judicial Notice

Next, the court addresses the defendants' Motions for the Court to Take Judicial Notice (Rec. Docs. 57, 66), which were made in support of the defendants' Motion to Dismiss (Rec. Doc. 56).

When deciding a motion to dismiss a district court may "consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) (citing Fed. R. Evid. 201(f)). A court may take judicial notice of a fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Additionally, the court *must* take notice of a fact if "a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). A court "cannot take judicial notice of findings of fact of other courts, [but] the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 408 (5th Cir. 2004) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)).

Here the court will take judicial notice of the court proceedings presented by the defendants because they are relevant in determining whether McZeal's claims are precluded and

there is no reason to doubt the accuracy of the submitted proceedings. The court will also take judicial notice verifiable public documents, including the Sheriff's Deed of Sale and the California Vexatious Litigant list.

Therefore, the Motions to Take Judicial Notice will be **GRANTED**. Taking judicial notice of other court proceedings does not convert this motion to dismiss into a motion for summary judgment. *See Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 333 n.3 (5th Cir. 2011) (holding that the district court was not required to convert the motion to dismiss into a motion for summary judgment when it took judicial notice of public records).

### C. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The defendants move to dismiss the plaintiff's amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state of a claim. The court first addresses the defendants Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) because "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). If the court does not have subject matter jurisdiction, the court must dismiss the claims. The defendants move to dismiss the plaintiff's complaint for lack of subject matter jurisdiction under the Rooker-Feldman Doctrine.

### 1. Motion to Dismiss under the Rooker-Feldman Doctrine

The defendants first argue that, to the extent that McZeal, Jr., is trying to overturn the state court judgment allowing MidSouth to foreclose on the property, his claims are barred under the Rooker-Feldman Doctrine.

"The Rooker–Feldman doctrine, reduced to its essence, precludes lower federal courts from exercising subject matter jurisdiction in an action it would otherwise be empowered to

adjudicate where the federal plaintiff seeks appellate review of a state court judgment." *McZeal v. J.P. Morgan Chase Bank, NA*, No. CIV.A. 13-6754, 2014 WL 3166715, at *5 (E.D. La. July 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005); *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)). "A state court judgment is attacked under Rooker–Feldman 'when the federal claims are inextricably intertwined with a challenged state court judgment, or where the losing party in a state court action seeks what in substance would be appellate review of the state judgment.'" *Id.* (quoting *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011)). The doctrine should be applied narrowly and only to those cases that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The doctrine should be applied and the claim barred, if the injury complained of arises from a state judgment. *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003).

  This is not the first time that McZeal, Jr. has encountered this doctrine. In a case before the Eastern District of Louisiana, McZeal, Jr. brought almost identical claims against a different bank that had mortgaged a property in Lafayette, Louisiana. *McZeal*, 2014 WL 3166715, at *1. The bank asserted that the court did not have subject matter jurisdiction over any claims that were, in essence, appellate review of the state court's foreclosure order. *Id.* at *5. After noting that "a discerning review of McZeal's Complaint [was] nearly impossible due to its sheer abstruseness," the court determined that the complaint did not include enough facts to determine how extricably intertwined the action was with state court proceedings. The court found that some, but not all, of the claims were likely barred by the Rooker-Feldman doctrine.

This court is faced with an almost identical analysis. To the extent that the plaintiff's injuries are extricably intertwined with the state court proceeding which allowed MidSouth to foreclose on the Moeling Street property, the court does not have jurisdiction over those claims. The dense and incomprehensible pleading however makes it impossible for the court to pinpoint which claims arise out of an independent injury and which arise out of the Louisiana state court order. However, to the extent that any of McZeal, Jr.'s claims are not barred by the Rooker-Feldman Doctrine, the claims are precluded under *res judicata*, and/or the claims are insufficiently pleaded in his amended petition under Rule 12(b)(6).

### 2. Dismissal under Rule 12(b)(6)

The defendants next argue that the claims should be dismissed Federal Rule of Civil Procedure 12(b)(6) because they are barred by *res judicata* and they do not support a claim for relief.

An action can be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the claimant fails "to state a claim upon which relief can be granted." Motions to dismiss are generally "viewed with disfavor and [should be] rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "[The] Court construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." *Id.* (quoting *Gregson*, 322 F.3d at 885).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," making the right to relief more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If

the allegations in the complaint, even if taken as true, do not entitle the plaintiff to relief, the complaint should be dismissed. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 558). Additionally, documents attached by defendants to a motion to dismiss are considered part of the pleadings if the documents are referred to in the plaintiff's complaint and are central to his claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

The court holds the complaint of a *pro se* litigant "to less stringent standards than formal pleadings drafted by lawyers." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002)). However, "[e]ven a liberally construed *pro se* …complaint…must set forth facts giving rise to a claim on which relief be may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1981) (citing *Levitt v. Univ. of Texas El Paso*, 847 F.2d 221, 224 (5th Cir 1988)). Typically if a *pro se* complaint fails to state claim upon which relief can be granted, the court will dismiss the complaint and give the plaintiff an opportunity to replead, unless the plaintiff has already pleaded the best possible case. *Hale*, 642 F.3d at 503.

Furthermore, *res judicata* generally must be pleaded as an affirmative defense and cannot be brought in a motion to dismiss under Rule 12(b)(6). *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2002)). However, "[d]ismissal under Rule 12(b)(6) on *res judicata* grounds is appropriate when the elements of *res judicata* are apparent on the face of the pleadings." *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014) (citing *Kan. Reinsurance Co. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir.1994)).

By taking judicial notice of other court proceedings filed by McZeal, Jr., the court finds that the elements of *res judicata* require no further factual development and are apparent on the

face of McZeal, Jr.'s amended complaint. Therefore, the court will consider whether the claims are barred by *res judicata* in the defendants' Motion to Dismiss.

### a. Res Judicata

Under the doctrine of *res judicata*, a party cannot litigate claims that have already been litigated in an earlier suit, or that should been brought in an earlier suit. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citing *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir.2004)).

> [T]he test for *res judicata* (claim preclusion) has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both claims."

*Wainscott v. Dallas Cty., Tex.*, 408 F. App'x 813, 815 (5th Cir. 2011) (quoting *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir. 1999)). McZeal, Jr. filed an almost identical suit against MidSouth and Angelle in the United States District Court for the Central District of California, 2:11-cv-07739-PA-PJW and the United States District Court for the Western District of Texas, 1:16-cv-00430-SS. The plaintiff's claims were dismissed with prejudice by both courts.[42] All but two of the claims have already been raised by the defendant in previous actions.[43] As further explained below, the majority of the plaintiff's claims are barred under the doctrine of *res judicata*.

---

[42] *McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Order (Rec. Doc. 58); *McZeal v. JP Morgan Chase Bank, NA*, 2:11-cv-07739-PA-PJW (C.D. Cal.), Court Order (Rec. Doc. 133).

[43] Compare *McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Amended Compl. (Rec. Doc. 39) *and McZeal v. JP Morgan Chase Bank, NA*, 2:11-cv-07739-PA-PJW (C.D. Cal.), Complaint (Rec. Doc. 3) *with* Amended Compl. (Rec. Doc. 55).The following chart shows the overlap of the plaintiff's claims in this case to those claims brought in California and Texas:

| Claims | 2:15-cv-2315 Present Case | 2:11-cv-07739 C.D. Cal. | 1:16-cv-00430 W.D. Tex. |
|---|---|---|---|
| RICO under 18 U.S.C. §§ 1964 (a), (b). (c), and (d) | X | X | X |

*i. Identity of the Parties*

First, for a claim to be barred by *res judicata*, the parties must be identical to the parties in the previous suit or in privity with the parties of the previous suit. In what capacity a party is sued also affects the application of *res judicata*. Parties sued in their representative capacities are not considered identical parties or parties in privity if they are later sued in their individual capacities. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990) (citing *Clark v. Amoco Production Co.*, 794 F.2d 967, 973 (5th Cir. 1986)). Further, suits against a party in his representational or official capacity "generally represent only another way of pleading an action against [the] entity." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Therefore, a party

|  |  |  |  |
|---|---|---|---|
| Violation of privacy rights under the Fourth Amendment | X | X | X |
| Violation of privacy rights under the Fourteenth Amendment | X |  |  |
| Violation of privacy rights under common law | X |  |  |
| Civil Action for Equal Rights under Law under 42 U.S.C. § 1981 | X | X | X |
| Civil Action for Equal Rights under Law under 42 U.S.C. § 1982 | X |  | X |
| Civil Action for Equal Rights under Law under 42 U.S.C. § 1983 | X | X | X |
| Civil Action for Equal Rights under Law under 42 U.S.C. § 1985 | X | X | X |
| Civil Action for Equal Rights under Law under 42 U.S.C. § 1986 | X |  | X |
| Civil conspiracy | X | X | X |
| Unjust enrichment | X | X | X |
| Aiding and abetting | X |  | X |
| Declaratory judgment under 28 U.S.C. § 2201, *et seq* | X | X | X |
| Extreme and outrageous conduct | X | X | X |
| Punitive damages | X | X | X |

sued in a representational capacity would have the same identity as the entity it represents. *See id.* However, unless they are found to be an alter ego of the corporation, individually sued "[s]tockholders and officers are not in privity to and are not personally bound by judgments against their corporations." *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) (citing *Am. Range Lines v. C.I.R.*, 200 F.2d 844, 845 (2d Cir. 1952)).

Two of the parties have been named in the current suit and the suits in California and Texas: MidSouth and Angelle. Five other defendants[44] were not named in the California and Texas suits. In his amended complaint, McZeal, Jr. identifies four of these defendants as officers, employees, and/or stockholders of MidSouth and he sued them in their individual and representational capacities.[45] McZeal, Jr. does not describe how Charbonnet, Sr. is connected to MidSouth or in what capacities Charbonnet, Sr. is being sued. This is likely an error. In their motions, the defendants name Charbonnet, Sr. as another director of MidSouth.[46] Therefore, the court will consider all previously unnamed defendants as officers, directors, or employees of MidSouth that have been sued in their representational and individual capacities. Accordingly, the claims against the five previously unnamed defendants in their representational capacities are considered claims against MidSouth. *See Monell*, 436 U.S. at 691.

Therefore, the identities of the parties are identical in the claims against MidSouth, Angelle, and the five other defendants in their representational capacities. However, because nothing suggests that they are alter egos of MidSouth, the five previously unnamed defendants are not in privity with MidSouth for claims brought against them in their individual capacities,

---

[44] James R. McLemore, Jr., Troy M Cloutier, Jeffery L. Blum, Will Charbonnet, Sr., and C.R. Rusty Cloutier.
[45] Amended Compl. (Rec. Doc. 55), pp. 6-9.
[46] Motion to Dismiss (Rec. Doc. 56), p. 11.

and *res judicata* does not apply to those claims. *See Dudley*, 504 F.2d at 982 (citing *Am. Range Lines*, 200 F.2d at 845).

### ii. A Court of Competent Jurisdiction

Second, for a claim to be barred by *res judicata*, the previous judgment must have been issued by a court of competent jurisdiction.

For a court to have competent jurisdiction, it must have subject matter jurisdiction over the claims. *See Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 788 (E.D. Tex. 2000) (finding that the state court was not a court of competent jurisdiction when it did not have subject matter jurisdiction over an exclusively federal claim). Both the California and Texas cases were brought in federal court under federal question jurisdiction.[47]

Neither the courts nor the defendants challenged the court's subject matter jurisdiction to dispose of the federal question claims. Therefore, the judgments were issued by courts of competent jurisdiction.

### iii. A Final Judgment on the Merits

Third, the previous judgment must have been a final judgment on the merits for *res judicata* to apply. "[T]he law is clear that a determination on a Rule 12(b)(6) motion that claims are dismissed with prejudice satisfies the requirement for a 'final judgment' for *res judicata* purposes." *Landor v. Lafayette Consol. Gov't.*, 126 F. Supp. 3d 761, 763–64 (W.D. La. 2015) (citing *Stevens v. Bank of Am., N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014)).

A district court's dismissal with prejudice is considered a final judgment even if the dismissal is currently being appealed. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013). Both the California and Texas courts dismissed McZeal's federal claims against

---

[47] *McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Amended Compl. (Rec. Doc. 39); *McZeal v. JP Morgan Chase Bank, NA*, 2:11-cv-07739-PA-PJW (C.D. Cal.), Complaint (Rec. Doc. 3).

Angelle and MidSouth with prejudice on a Rule 12(b)(6) motion.[48] McZeal, Jr. is in the process of appealing both judgments.[49]

Because the Rule 12(b)(6) dismissals were with prejudice they are a final judgment on the merits, and McZeal, Jr.'s current appeals do not impact their finality.

    iv.   *The Same Claim or Cause of Action*

Finally, to show that a claim is barred under *res judicata*, the cause of action or claim must have been the same in the prior suit.

"To determine whether the claims are the same, the court applies the transactional test, which considers whether the claims turn on the same nucleus of operative facts." *Wainscott*, 408 F. App'x at 815 (citing *In re Southmark Corp.*, 163 F.3d at 934). McZeal, Jr.'s current claims before this court arise out of the foreclosure on the Moeling Street property. In the California and Texas suits, he does not specifically name the Moeling Street property, but his claims are based on improper foreclosures. Because MidSouth's foreclosure connection to McZeal, Jr. is through the Moeling Street property, the court finds that the claims arise out of a common nucleus of operative facts.

This conclusion is further supported by the fact that the claims raised by McZeal, Jr. in all three suits are largely identical.[50] The court could not identify any claims that did not arise out of the foreclosure action, and therefore, even the unique claims that are raised in the present suit are barred because they should have been raised in the other actions.

---

[48] *McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Order (Rec. Doc. 58); *McZeal v. JP Morgan Chase Bank, NA*, 2:11-cv-07739-PA-PJW (C.D. Cal.), Court Order (Rec. Doc. 133).

[49] *See McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Notice of Appeal (Rec. Doc. 60); *McZeal v. JP Morgan Chase Bank, NA*, 2:11-cv-07739-PA-PJW (C.D. Cal.), Order from 9th Circuit (Rec. Doc. 168).

[50] *See* Table *supra* at note 43.

Based on the foregoing reasons, McZeal, Jr.'s claims against MidSouth, Angelle, and the five other defendants in their official capacities are barred under *res judicata*.

### b. Failure to State a Claim

The only remaining claims are claims brought against the five previously unnamed defendants in their individual capacities.

With respect to these defendants plaintiff has not alleged any facts that would support these claims and neither has he met the heightened standard of pleading required for fraud claims even when holding McZeal, Jr.'s *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers." *Hale*, 642 F.3d at 499. The complaint was largely incomprehensible. Even when McZeal attempted to state the factual basis and acts done by the defendants, those allegations were, as Judge Sparks accurately put it, "gobbledygook."[51]

The plaintiff had an opportunity to amend the complaint, but his amended complaint did not cure the deficiencies noted by the court. The only changes made to his amended complaint, as far as the court can determine, are adding thirty-two pages, changing the formatting on how the complaint was presented, and decreasing the amount for which he asked.[52] His ramblings do not comply with the Federal Rules of Civil Procedure, and this court is convinced that plaintiff will not correctly cure the complaint if given another chance.

## III.
## SANCTIONS

While this court could have summarily dismissed the amended complaint for failure to state a claim for relief under Rule 12(b)(6), the undersigned has gone through the details of this case and the reasoning behind the dismissal because it seems inevitable that McZeal, Jr. will file

---

[51] *McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Order (Rec. Doc. 58), p. 2.
[52] *Compare* Compl. (Rec. Doc. 1) *with* Amended Compl. (Rec. Doc. 55).

suit again. His history of litigation clearly shows that he does not take direction from the courts. He repeatedly has had suits dismissed for procedural and substantive reasons. His filings waste the time of the parties involved and they waste the time and resources of the courts that must make sense of them.

Looking through McZeal, Jr.'s litigation history within Western District of Louisiana does not show the same egregious repeated pattern of abuse that he has committed in other districts.[53] However his amended complaint and the claims included are almost cookie-cutter allegations that he has made in other district courts. Multiple federal district courts have warned him that if he continues to present subpar and frivolous filings he will be sanctioned.[54]

McZeal, Jr. apparently has not understood the message. Therefore, because McZeal, Jr. filed a complaint and amended complaint that he knew or should have known was barred under the Rooker-Feldman Doctrine, was barred under *res judicata*, and was inadequate under the Federal Rules of Civil Procedure, the court will consider whether sanctions should be imposed pursuant to Rule 11 of the Federal Rule of Civil Procedure and/or the court's inherent powers. The issue of sanctions is referred to the Magistrate Judge for further proceeding.

---

[53] The Southern District of Texas has barred him from filing anything in court without the consent of the chief judge. See *Washington Mut. Bank FA v. McZeal*, 265 F. App'x 173, 174 (5th Cir. 2008) (affirming the district court's sanction).

[54] *See, e.g., In re Al McZeal*, 5:13-cv-00004 (C.D. Cal) (Rec. Doc. 18) ("These arguments oblige this Court to warn Plaintiffs that filings of a similar quality in the future may result in sanctions."); *McZeal v. Deutsche Bank Nat'l Trust Co.*, 1:16-cv-00430-SS (W.D. Tex.), Order (Rec. Doc. 58), p. 2. ("[T]his lawsuit is DISMISSED with prejudice to refiling with the caveat that any similar filing will result in substantial sanctions and a personal judgment on each of the filers."); *McZeal v. JP Morgan Chase Bank, NA*, 2:11-cv-07739-PA-PJW (C.D. Cal.), Court Order (Rec. Doc. 133), p. 14 (stating that the court refrained from sanctioning McZeal at the time because his behavior did not rise to the level of vexatious litigant within the district).

## IV.
## CONCLUSION

For reasons the court will deny plaintiff's Motion to Strike (Rec. Doc. 63) and grant defendants' Motions for the Court to Take Judicial Notice (Rec. Docs. 57, 66). Additionally the court will grant defendants' Motion to Dismiss (Rec. Doc. 56)

Finally, the court will refer to the Magistrate Judge for further proceedings the issue of potential sanctions against plaintiff under Rule 11 of the Federal Rule of Civil Procedure and/or the court's inherent powers.

Thus done and signed this 13 day of January, 2017.

*/s/ Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE