UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ALFRED MCZEAL** | \* **CIVIL ACTION NO. 2:15 -CV-02315** |
| | \* |
| **v.** | \* |
| | \* **JUDGE WALTER** |
| **MIDSOUTH NATIONAL BANK N.A.,** | \* |
| **ET AL.** | \* |
| | \* **MAGISTRATE JUDGE KAY** |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM ORDER

Before the court is a Bill of Costs (Rec. Doc. 86) submitted by the defendants. Alfred McZeal, the plaintiff, has not filed an objection to the reasonableness of the attorneys' fees or costs. For the reasons explained below, the court will award the defendants $10,527.29 in attorneys' fees and costs.

### I.  FACTS & PROCEDURAL HISTORY

A complete history of the current case can be found in this courts previous memorandum ruling which dismissed McZeal's case with prejudice and directed the Magistrate Judge to determine appropriate sanctions for McZeal's Rule 11 violation.[1] The Magistrate Judge issued a Report and Recommendation in which she concluded that McZeal should be placed on the vexatious litigant list for the Western District of Louisiana and that the defendants should be awarded attorneys' fees and costs for having to defend themselves against McZeal's frivolous litigation.[2] This court adopted the Report and Recommendation, and ordered the defendants to submit an itemized Bill of Costs, so that the court could award reasonable attorneys' fees and costs.[3] The defendants submitted a Bill of Costs asking for $54,833.00 for 95.60 hours of work

---

[1] Memo. Ruling (Rec. Doc. 75); Judgment (Rec. Doc. 76).

[2] Report and Recommendation (Rec. Doc. 83).

[3] Judgment (Rec. Doc. 85).

and \$4,155.63 for costs incurred.[4] After the Bill of Costs was submitted, McZeal appealed the Judgment adopting the Report and Recommendation to the United States Court of Appeal for the Fifth Circuit.[5] The Fifth Circuit dismissed the appeal on June 16, 2017, for want of prosecution.[6] McZeal filed no objection to the Bill of Costs before this court.

## II.  LAW & ANALYSIS

A district court may impose sanctions for violating Rule 11, including attorneys' fees and costs. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1172 (5th Cir. 1988) (citing *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 876-78 (5th Cir. 1988)). When imposing attorneys' fees and costs under Rule 11, the court must consider four factors: (1) What conduct is being punished or is sought to be deterred by the sanction?; (2) What expenses or costs were caused by the violation of the rule?; (3) Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?; and (4) Was the sanction the least severe sanction adequate to achieve the purpose of the Rule 11? *Topalian v. Ehrman*, 3 F.3d 931, 936-37 (5th Cir. 1993). When considering these factors and determining an amount, the court is not required to award all attorneys' fees incurred by the Rule 11 violation. *Willy*, 855 F.2d at 1172 (citing *Smith Int'l, Inc. v. Tex. Commerce Bank*, 844 F.2d 1193, 1197 (5th Cir. 1988)).

### A.  What Conduct Is Being Punished and Deterred?

This court has determined that Rule 11 sanctions are appropriate because "McZeal's bad faith is apparent from his litigation history and his conduct in the instant suit."[7] McZeal "continues to pursue frivolous claims against these defendants, wastes this court's valuable time

---

[4] Bill of Costs (Rec. Doc. 86).

[5] Notice of Appeal (Rec. Doc. 87); USCA Appeal Fees Received (06/02/2017 Docket Entry).

[6] USCA Judgment (Rec. Doc. 91).

[7] Report and Recommendation (Rec. Doc. 83), p. 5.

and resources with his meritless filings, and only reiterates the same nonsense he has apparently been peddling across the country when given the opportunity to amend or dismiss."[8] Furthermore, the court found that sanctions in the form of an award of attorneys' fees and costs were appropriate because of "McZeal's harassing behavior toward his opponents and the disregard that his vexatious litigation displays for judicial authority."[9] Therefore, by imposing these sanctions, the court aims to deter McZeal from filing the same frivolous claims again and punish him for not heeding the numerous warnings from several courts.

### B. What Expenses or Costs Were Caused by the Violation of the Rule?

The defendants submitted a timesheet detailing the hours and expenses that they have paid during the entire time the case was pending in the Western District of Louisiana. They have submitted that they worked for 95.6 hours at various hourly rates totaling $54,833.00, and incurred billable travel, legal research, and postage expenses, totaling $4,155.63.[10] By the defendants' calculations, the total costs and attorneys' fees for this case were $58,988.63.[11] The court finds that any attorneys' fees and/or expenses incurred by the defendants in this case were a result of McZeal's Rule 11 violation, i.e. the frivolous suit filed by McZeal. Therefore, the comprehensiveness of the submitted attorneys' fees and expenses is appropriate.

### C. Were the Costs or Expenses "Reasonable"?

Next, the court must determine whether the attorneys' fees and costs submitted by the defendants are reasonable.

---

[8] *Id.*

[9] *Id.*

[10] Invoice (Rec. Doc. 86), pp. 7-11.

[11] *Id.*

## 1. Attorneys' Fees

One of the accepted methods to determine whether attorney fees are reasonable for Rule 11 sanctions is to apply the lodestar analysis. *See Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006). Under the lodestar analysis, the court determines the lodestar amount by "multiplying the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers." *See id.* (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). Reasonable hourly rates are calculated based on "the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Tasch, Inc. v. Unified Staffing & Assocs., Inc.*, No. CIV.A. 02-3531, 2004 WL 1857640, at *3 (E.D. La. Aug. 18, 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The relevant community for this inquiry is the community in which the district court sits even if the attorneys complete the work outside of that community or if market rates are lower in the court's community. *Id.* (citing *Donnell v. United States*, 682 F.2d 240, 251-52 (D.C. Cir. 1982)).

After calculating the lodestar amount, the court may adjust it upward or downward based on a variety of factors referred to as the *Johnson* factors, including:

> 1) the time and labor required for the litigation; 2) the novelty and complication of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorney had to refuse other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable;" 11) the type of attorney-client relationship and whether that relationship was long-standing; and 12) awards made in similar cases.

*Kellstrom*, 50 F.3d at 329 n.19 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)).

4

This case was originally filed in the Central District of California and then transferred to the Lake Charles Division of the Western District of Louisiana, which makes two billing rates potentially relevant. However, the defendants have only submitted rates and times for the period in which the case was pending in the Lake Charles Division. The defendants' attorney, Ms. Miller, has more than 30 years of experience, and she submitted an hourly rate of $585.00 for work completed before February 1, 2017, and an hourly rate of $595.00 for work completed after February 1, 2017.[12] The court finds these rates well outside the prevailing market rates for similar work in Lake Charles, Louisiana.

The defendants have submitted no evidence of what the prevailing fees are in the Lake Charles Division. Based on a survey of cases in the last ten years in which Lake Charles area attorneys were awarded attorneys' fees, the court determines that a more appropriate rate would fall somewhere between $105 and $300 per hour.[13] Based on the frivolous nature of the suit and the *pro se* status of the plaintiff, the court finds that the issues involved in the case could have competently been handled by someone with less experience than Ms. Miller, and that it was

---

[12] Declaration of Miller (Rec. Doc. 86), p. 2.

[13] *Beauregard Par. Sch. Bd. v. Honeywell Inc.*, No. 2:07 CV 1459, 2008 WL 4180917, at *2 (W.D. La. Sept. 9, 2008) (determining that hourly rates of $215.00 to $360.00 were reasonable for defendants' attorneys); *Fox v. Vice*, No. 2:06-CV-135, 2008 WL 4386880, at *7 (W.D. La. Sept. 22, 2008), *vacated and remanded based on other grounds*, 563 U.S. 826 (2011) (finding that hourly rates of $120 and $105 per hour were reasonable when the plaintiff attorneys had 10 or more years of experience); *Jeter v. Comm'r of Soc. Sec.*, No. 2:06-CV-81, 2009 WL 909257, at *6 (W.D. La. Apr. 3, 2009) (determining that in a social security case, counsel was entitled to 2.5 times his normal hourly rate of $125.00 per hour); *Allen v. Town of New Llano*, No. 09-CV-2011, 2011 WL 3611463, at *1 (W.D. La. June 22, 2011), report and recommendation adopted, No. 2:09 CV2011, 2011 WL 3625708 (W.D. La. Aug. 17, 2011) (determining that $145.00 per hour was a reasonable rate for insurance defense work); *MidSouth Bank, N.A. v. McZeal*, No. 2:10 CV 1560, 2012 WL 3061520, at *2 (W.D. La. July 25, 2012) (awarding $250.00 per hour for an attorney with more than 10 years of experience defending a frivolous removal that attacked the same foreclosure of the 2007 Moeling Street property); *Insulators & Asbestos Workers Local 112 Pension Trust Fund v. George*, No. 2:10 CV 00144, 2012 WL 4059904, at *2 (W.D. La. Sept. 13, 2012) (finding that an hourly rate of $200.00 per hour was reasonable for the plaintiffs' attorney); *Bertrand v. City of Lake Charles*, No. 2:10-CV-867, 2013 WL 1790089, at *2 (W.D. La. Feb. 25, 2013), report and recommendation adopted, No. 2:10-CV-0867, 2013 WL 1789713 (W.D. La. Apr. 26, 2013) (determining that hourly rates of $250.00 and $225.00 per hour were reasonable for plaintiff attorneys' work in a family medical leave act case when the attorneys had more than 20 years of experience); *Cantu Servs., Inc. v. Frazier*, No. 2:12-CV-1292, 2016 WL 4574020, at *3 (W.D. La. Aug. 31, 2016), *vacated and remanded based on other grounds*, No. 16-31035, 2017 WL 1089508 (5th Cir. Mar. 22, 2017) (finding an hourly rate of $130 per hour reasonable for a partner of a law firm in a civil rights defense case).

unnecessary to employ a California firm to defend the case while it pended in Louisiana. Therefore, the court determines that an hourly rate of $150 is reasonable for the hours Ms. Miller expended.

Next, the court must determine the reasonable number of hours expended on the case. The defendants submit an invoice showing that 95.6 hours were spent working on motions, researching, and communicating with clients.[14] Of those hours, 3.3 hours were dedicated to revisions and cite-checking, which was done by a lower-billing paralegal or attorney.[15] Therefore, the number of hours reported by Ms. Miller is 92.3. The court finds this number reflects needlessly duplicative work that could have been mitigated. For example, counsel chose to travel to Lake Charles from Los Angeles for a motions hearing, even though the court routinely allows counsel to appear for such hearings via telephone. Accordingly, the court will reduce Ms. Miller's hours by 25 percent, making a total of 69.23 hours.

Consequently, the lodestar amount for Ms. Miller's work is $10,384.50.[16] Adjusting the 3.3 hours of work done by a paralegal or lower billing attorney proportionally results in a lodestar amount of $142.79 for that work.[17] The total lodestar amount for the hours worked is $10,527.29. Because the court has already adjusted the lodestar to reflect the amount of skill required for the work and whether the work could have been mitigated, the lodestar amount does not need to be adjusted upward or downward based on the *Johnson* factors.

---

[14] Invoice (Rec. Doc. 86), pp. 7-11.

[15] *Id.* The rate was $225.00 per hour.

[16] $150.00 × 69.23 = $10,384.50

[17] $\left( \frac{\$150.00}{\$585.00} \times \$225.00 \right) \times (3.3 \; hours \times 75\%) = \$142.79$

## 2. Costs

The defendants submitted an invoice that details $4,155.63 in total disbursements for reproduction costs, postage costs, Federal Express costs, filing fees, travel, Pacer research, and LexisNexis research. In determining what costs are reasonable, the court should consider whether the costs are self-imposed, mitigatable, or the result of delay in seeking court intervention. *Topalian*, 3 F.3d at 936-37. For the following reasons, the court will not award any of the costs submitted by the defendants.

The court declines to award reproduction costs, postage costs, and Federal Express costs because the defendants have provided no way of measuring whether the costs are reasonable. *See Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991). The court does not know what was reproduced, at what rate, or what was mailed, at what rate. The court will also not award the defendants' travel costs because the costs were self-imposed and mitigatable. The defendants chose to hire nonlocal counsel and chose to have that counsel travel even though a telephone appearance would have sufficed for the hearing. Similarly, the filing fee for a Certificate of Good Standing in California will not be awarded because this was a self-imposed cost of hiring nonlocal counsel. Finally, the court will not award Pacer or LexisNexis research costs because the defendants have not provided information about how such research costs are built into their billing rate or how the research costs themselves were incurred. *See Spectrum Commc'n Specialists, LLC v. KMJ Servs., Inc.*, No. CIV.A. 09-159, 2012 WL 2190806, at *6 (E.D. La. June 14, 2012) (citing federal cases discussing the interplay between research costs and attorneys' fees). Without this information, the court cannot determine if the costs are reasonable.

### D. Is the Sanction the Least Severe Sanction Adequate to Achieve Rule 11's Purpose?

Finally, the court must consider whether an award of $10,527.29 is the least severe sanction adequate to punish McZeal for, and deter McZeal from, filing frivolous and convoluted petitions. When determining the severity needed for the sanction, the court considers that McZeal has managed to pay the filing fee of $400.00 and appeal fee of $505.00 for the current case and has filed numerous other cases with similar fees.[18] Based on his repeated behavior of filing lawsuits, appealing dismissals, and refiling lawsuits, the court finds that an award of $10,527.29 is no more severe than necessary to punish and deter his behavior. Therefore,

**IT IS ORDERED** that attorneys' fees and costs be awarded to the defendants in the sum totaling $10,527.29.

Shreveport, Louisiana, this 10th day of _July_____, 2017.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[18] *See* Exhibit A (Rec. Doc. 57-1), pp. 1-5. The Pacer search submitted shows that McZeal filed more than 50 lawsuits and more than 15 appeals. If he spent $400 for each suit and $505 for each appeal, he has spent over $20,000 litigating claims, the vast majority of which have been dismissed as frivolous. This calculation is likely significantly lower than the actual amount he has spent on frivolous claims because it does not include the numerous bankruptcy petitions he has filed. The Pacer search indicates that he has filed for bankruptcy nearly 30 times.